**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karen L. Cowand,<br><br>            Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>            Defendant. | No. CV11-0964-PHX-DGC<br><br>**AMENDED ORDER** |

Plaintiff applied for disability insurance benefits on June 21, 2007, claiming to be disabled as of March 30, 2006. Tr. at 24. Defendant denied Plaintiff's claim and Plaintiff appealed. *Id.* Administrative Law Judge ("ALJ") Lauren R. Mathon held a hearing on April 5, 2010. *Id.* Judge Mathon issued a written decision on April 27, 2010, finding that Plaintiff was not disabled under the terms of the Social Security Act. Tr. 24-30. Plaintiff commenced this action, asking the Court to review and vacate Defendant's denial of benefits pursuant to 42 U.S.C. § 405(g). Doc. 17. Defendant filed a memorandum in opposition (Doc. 20), and Plaintiff filed a reply. Doc. 24. Neither party has requested oral argument. For the reasons that follow, the Court will vacate Defendant's decision and remand for further proceedings.

**I.    Standard of Review.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but

less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

**II.     Analysis.**

For purposes of Social Security benefits determinations, a disability is

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505.

Determining whether a claimant is disabled involves a sequential five-step evaluation process. The claimant must show (1) he is not currently working, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing his past work. If at any step the Commission determines that a claimant is or is not disabled, the analysis ends; otherwise it proceeds to the next step. If the claimant establishes his burden through step four, the Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

The ALJ found that Plaintiff had not worked since March 30, 2006, the onset date of her claimed disability. Tr. at 26. She found that Plaintiff suffered from the following severe physical impairments: migraine headaches, low back disorder, and sciatica. *Id.* The ALJ found, however, that these impairments did not meet or medically equal one of the listed impairments, and that Plaintiff's RFC would not preclude her from performing light work. *Id.* at 26-27. In reaching these determinations, the ALJ found that Plaintiff's

own testimony of her impairments was not credible; that the statements of her treating physician, Dr. Douglas Campbell, and her nurse practitioner, Michelle Peters, were not supported by clinical notes or evidence on the record; and that the opinion of the consultative examiner was more reliable. *Id.* at 28-29. The ALJ concluded that Plaintiff was capable of returning to past relevant work of data entry or cashier. *Id.* at 29.

Plaintiff asserts that Defendant's denial of benefits was based on procedural error and a lack of substantial evidence. Doc. 17 at 1. Plaintiff argues that the ALJ failed to provide sufficient justification for her weighing of medical opinion evidence, failed to justify her reasons for rejecting Plaintiff's subjective complaints, and failed to articulate reasons for rejecting the lay-testimony of Plaintiff's husband, James Cowand. Doc. 17 at 11-24. Defendant responds that the ALJ properly considered medical source opinions as well as Plaintiff's subjective complaints, and that her decision was supported by substantial evidence. Doc. 20 at 7-21.

### A. Medical Opinion Evidence.

"The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see* 20 C.F.R. § 404.1527(d); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). The ALJ may reject the opinion of a treating or examining physician by making "'findings setting forth specific legitimate reasons for doing so that are based on substantial evidence in the record.'" *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citation omitted). "The ALJ can 'meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Id.* Further, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id.*

### 1. Dr. Douglas Campbell.

Medical records show that Plaintiff first saw Dr. Douglas Campbell in March 2009 for back pain and headaches occurring 2-3 times a week over the last month to a year for which she took her husband's vicodin to "take[] the edge off." Tr. 287-88. Plaintiff saw Dr. Campbell five times through March of 2010, during which time Dr. Campbell treated her with medications for her headaches and ongoing back and leg pain. Tr. at 280-90. In March of 2010, Dr. Campbell reported that Plaintiff was taking vicodin daily for headache pain, with the vicodin reducing the pain from a 9 to a 7-8. Tr. at 290. Dr. Campbell noted that Plaintiff was not sleeping well, had weakness in her legs at times, was limited to walking 100 yards, 6-8 steps at a time, could sit or stand for 15 minutes at a time, could not stoop, crawl, bend or twist, and could lift less than 20 pounds and carry 10 pounds or less for 10 minutes at a time. *Id.*, Tr. at 292. Dr. Campbell opined that Plaintiff's back pain and sciatica qualified her for disability. Tr. at 292. Dr. Campbell also provided a medical assessment form focused on Plaintiff's migraines in which he stated that Plaintiff's symptoms lasted three hours or more daily, that her impairments affected her ability to work, and that her restrictions were moderately severe. Tr. at 293-94. Dr. Campbell affirmed that these limitations could reasonably be expected to result from objective medical findings. Tr. at 294. Upon reviewing Dr. Campbell's assessment, the vocational examiner opined that someone with these limitations could not perform full time work on a regular basis. Tr. 55.

The ALJ gave little weight to Dr. Campbell's findings and conclusions respecting Plaintiff's ability to work. Tr. at 29. She explained that Dr. Campbell had been evaluating Plaintiff for barely twelve months when he wrote his conclusions and she found his assessment "too restrictive" based upon his clinical notes. *Id.* She also stated that Dr. Campbell did not perform or rely upon diagnostic medical tests to support his findings of disability and that Dr. Campbell's initial notation that Plaintiff had suffered chronic headaches for up to a year was unsupported by the records of Plaintiff's Emergency Room visits in 2008. *Id.* The ALJ concluded that the assessment of the

consultative examiner who had the benefit of reviewing the entire record was "well reasoned and better supported." *Id.*

Plaintiff argues that the ALJ failed to give clear and convincing reasons for discounting Dr. Campbell's medical opinion evidence. Doc. 17 at 13-16. The Court agrees that the ALJ's explanations fall short of Ninth Circuit requirements. The ALJ stated that Dr. Campbell's assessment was too restrictive "[g]iven the clinical notes" (Tr. at 29), but she did not specify which clinical notes, nor did she address Dr. Campbell's notations of Plaintiff's headaches, ranging from one time a week to almost daily (Tr. at 282, 284, 288), or the clinical notes related to Plaintiff's functional limitations (*see* Tr. at 290, 292). Because the ALJ failed to address the clinical notes, it is not at all clear what in the notes led her to conclude that Dr. Campbell's opinion was "too restrictive." *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.")

The ALJ also stated that Dr. Campbell did not conduct any "diagnostic tests" (Tr. at 29), but the record shows that Dr. Campbell did perform straight leg raise tests ("SLRT"), examined Plaintiff's back for tenderness, and made observations regarding her strength, reflexes and gait (Tr. at 286, 290, 292). The ALJ did not set forth a detailed summary of conflicting evidence to show why she found the conclusions Dr. Campbell reached on the basis of these examinations unreliable.

The ALJ referred specifically only to Plaintiff's 2006 MRI, noting that it did not demonstrate "nerve root compression," something she said Dr. Campbell's assessment "appears to have relied on." Tr. at 29; *see* Tr. at 292. But the MRI did show degenerative disc disease with disc bulging and herniation (Tr. at 246-48), and Dr. Campbell's report referred to nerve root compression as characterized by, among other things, neuro-anatomic distribution of pain (Tr. at 292). The ALJ did not explain why the findings of the MRI – degenerative disc disease in the lumbar spine with disc bulging and

herniation – were not consistent with Dr. Campbell's assessment in light of Plaintiff's symptoms of back pain and sciatica, symptoms the ALJ found could reasonably be caused by Plaintiff's impairments (Tr. at 28).

The ALJ stated that she gave more credence to the findings and conclusions of the consultative examiner who, she explained, had access to Plaintiff's full medical records and ordered an x-ray of Plaintiff's hip.  Tr. at 29.  But the ALJ did not explain what evidence in Plaintiff's "full medical records" was in conflict with Dr. Campbell's findings, nor is it clear why the x-ray of Plaintiff's hip would have any bearing on the impairments Dr. Campbell found restrictive.  Simply stating that the consultative examiner relied on more evidence than the treating physician is not the equivalent of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings." *Thomas*, 278 F.3d at 957.

Defendant refers to numerous findings in medical reports not cited by the ALJ (Doc. 20 at 8-10), but the Court's review must be "based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*, 554 F.3d at 1225.  Where the ALJ has failed to identify clinical evidence conflicting with that provided by Dr. Campbell, the Court is left to guess at why she concluded that the consultative examiner's opinion was better supported.  This the Court cannot do.  *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001) (the district court may not affirm the ALJ's decision "on a ground that the [ALJ] did not invoke in making [his] decision[.]").  The Court concludes that the ALJ failed to set forth clear and convincing reasons for discounting the opinion of Plaintiff's treating physician.

## 2. **Nurse Practitioner Michelle Peters.**

Nurse Practitioners are not an "acceptable medical source" for documenting a medical impairment under 20 C.F.R. § 404.1513(a).  They are, however, considered "other sources" that the Commissioner may use to show the severity of a claimant's

impairments and how these impairments may affect her ability to work. 20 C.F.R. § 404.1513(a).

Nurse Practitioner Michelle Peters saw Plaintiff twice in December of 2006 and again in August of 2007. Tr. 239-45. Ms. Peters prepared a medical assessment of Plaintiff's ability to work on November 21, 2007. Tr. 237-38. She opined that Plaintiff could perform work 8 hours a day, five days a week, on a consistent basis. Tr. at 237. She also stated "per patient report" that Plaintiff had "cervical, thoracic, lumbar disc bulges, spondylosis, stenosis, and degenerative disc disease." *Id.* She stated that Plaintiff could sit, stand, and walk less than one hour in an eight hour work day, lift and carry less than ten pounds, and could not bend, crawl, climb, stoop, balance, crouch, or kneel. *Id.* Ms. Peters noted that these assessments were "per patient report." *Id.* The assessment concluded that Plaintiff had moderately severe limitations and that these symptoms could reasonably be expected to result from clinical findings, specifically Plaintiff's MRI. Tr. at 238.

The ALJ attributed little weight to Ms. Peters' assessment. Tr. at 29. She noted that the report began with a finding that Plaintiff was capable of work "on a regular and consistent basis," and that Ms. Peters noted in several places on the form that the limitations were "per patient report" and not based on objective evidence. *Id.* A review of Ms. Peters' clinical notes shows that she conducted no medical tests and made no findings to support the severity or limiting effects of Plaintiff's subjective complaints. Tr. at 239-45. The ALJ need not accept the conclusions even of treating physicians where they are "brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Here, Ms. Peters concluded that Plaintiff could work and the "per patient" indications to the contrary are unsupported. The Court finds that the ALJ identified clear and convincing reasons for discounting Ms. Peters' assessment.

**B.     Plaintiff's Subjective Complaints.**

Plaintiff appeared for the hearing before the ALJ using a cane she had purchased without a prescription. Tr. at 49. She testified that she had worked as a data entry clerk

for 15 years until her job was terminated and that she then worked as a cashier for Wal-Mart for four months before quitting because she could not stand for the required length of time. Tr. at 41-42. Plaintiff testified that she had been diagnosed with herniated discs, chronic migraines, and arthritis in her hips. Tr. at 42. She estimated that she suffered about 25 severe migraines per month. Tr. at 43. As to functional capacity, Plaintiff testified that she could stand or walk for only ten to 20 minutes at a time, that she would have to change position while seated every 15-30 minutes, and that she could lift or carry up to ten pounds. Tr. at 45-46. She also testified that her back, hip, and migraine pain limited her to between two and four hours of sleep a night and she would have to take naps three to four times a day. Tr. at 46. The vocational expert testified that a person with the symptoms Plaintiff described could not perform Plaintiff's past relevant work. Tr. at 56-57.

The ALJ did not accept Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms. Tr. 28. Plaintiff argues that the ALJ failed to give legally sufficient reasons for rejecting her subjective complaints. Doc. 17 at 18-22. The Court does not agree.

The ALJ evaluated Plaintiff's testimony using the two-step analysis established by the Ninth Circuit. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Applying the test of *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), the ALJ first determined that Plaintiff's impairments could reasonably produce the symptoms alleged. Tr. 28. Given this conclusion, and because there is no evidence of malingering, the ALJ was required to present "specific, clear and convincing reasons" for finding Plaintiff not credible. *Smolen*, 80 F.3d at 1281. Although it is a close question, the Court concludes that the ALJ provided such reasons.

As noted above, Plaintiff testified that she has 25 severe migraines per month – virtually one severe migraine every day. The ALJ observed, however, that the record contains minimal evidence that Plaintiff sought relief for headaches prior to seeing Dr. Campbell in March 2009, and that her treatment after that date was limited to non-

headache-specific medications and based solely on Plaintiff's subjective complaints. Tr. at 28. The ALJ found it significant that despite claiming 25 severe headaches per month, Plaintiff made no visits to the emergency room as she had previously done for other kinds of pain and vertigo. *Id.* The record does show that when Plaintiff went to the emergency room on May 9, 2008, complaining of chest pain, she also reported having "intermittent headaches which are chronic in nature." Tr. at 277-78. She again visited the emergency room on July 18, 2008, complaining of dizziness and headache and reporting "intermittent headache over the last few months." Tr. at 274-75. But these two visits, in the midst of a three-year period between the claimed disability onset date and her first visit to Dr. Campbell, do not substantially undercut the ALJ's point that Plaintiff sought virtually no medical help for headaches she claimed to be severe and almost a daily occurrence.

With respect to Plaintiff's back, the ALJ noted that the 2006 MRI showed no cord compression, that Plaintiff's treatment providers had never recommended surgical intervention, and that emergency room providers reported in 2008 that Plaintiff had full range of motion in all her joints without evidence of pain and she had normal strength and sensation. *Id.* The ALJ also noted that there was no evidence that the cane Plaintiff used had ever been prescribed by a physician, and she opined that Plaintiff's pain descriptions were inconsistent with the fact that she told Dr. Campbell she was retired, not disabled, and that she reported performing household chores and caring for her disabled spouse. *Id.*

The emergency room doctors did note on May 9, 2008, that Plaintiff had "full range of motion of all 4 extremities without pain," a notation that suggests Plaintiff had little restriction due to back issues more than two years after her claimed disability onset date. *See* Tr. at 279. The fact that Plaintiff's doctors had not recommended surgery or other interventions also has some bearing on whether Plaintiff consistently reported the severity of pain she represented at the hearing. The other reasons the ALJ gave for questioning the credibility of Plaintiff's testimony would not constitute clear and

convincing evidence on their own, but support the ALJ's conclusion when combined with the 2008 ER notes and the absence of any medial recommendation for surgery or other intervention for her back pain. Plaintiff did report to Dr. Campbell that she was "retired" and that she cared for her disabled husband, and Plaintiff's cane had never been prescribed by a physician. The Court concludes that the ALJ's credibility conclusion is supported by substantial evidence – "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Robbin*, 466 F.3d at 882 – and reaches the clear and convincing threshold.

### C. Lay Witness Testimony.

The record contains a report from Plaintiff's husband James Cowand related to Plaintiff's daily activities and functioning. Tr. at 185-92. Mr. Cowand noted, among other things, that Plaintiff used to cook entire meals and bake, but since the onset of her impairments she only prepares microwavable or pre-cooked meals (Tr. 187); she needs help with all chores (*id.*); she does not drive or go out alone and must use an electrical cart in stores (Tr. 188); her hearing, memory, and concentration are all affected by pain (Tr. 190); she can only walk for 3-4 minutes without needing to rest (*id.*); and she uses her cane most of the time. Tr. at 191. The ALJ did not address this report or appear to have considered any of its observations in reaching her findings and conclusions. Plaintiff claims that this is legal error. The Court agrees.

The Ninth Circuit has stated that "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill*, 12 F.3d at 919; 20 C.F.R. § 404.1513(d)(4) & (e)). "Indeed, 'lay testimony as to the claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment.'" *Id.* (emphasis in original; citation and alteration omitted); *see* 20 C.F.R. § 404.1545(a)(3). Here, the ALJ disregarded the testimony of James Cowand without comment. This was clear error.

Defendant acknowledges that the ALJ "could have been more articulate" with

respect to Mr. Cowand's statement, but argues that her failure to address it constitutes harmless error because Mr. Cowand's testimony only echoes Plaintiff's own testimony that the ALJ found not to be credible. *Id.* at 23. Rejecting testimony on this basis, however, would eviscerate the purpose of requiring the ALJ to look to all relevant medical and other evidence, including observations of family, neighbors, friends, or other persons when assessing a claimant's limitations. 20 C.F.R. § 404.1545(a)(3). Social Security regulations recognize that these "other sources," including spouses, may have special knowledge of an individual and can provide insight into her impairments and ability to function. *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Consequently, "[i]f the ALJ wishes to discount the testimony of [a] lay witness[], he must give reasons that are germane to [that] witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Here, where there is no indication that the ALJ even considered Mr. Cowand's statement, it is impossible to tell how that evidence would have affected the ALJ's assessment of Plaintiff's limitations or whether the degree to which Mr. Cowand's first-hand observations corroborate Plaintiff's own testimony might have altered the ALJ's credibility determination. On this record, the Court cannot conclude that the ALJ's omission of this evidence was harmless.

**III.    Remedy.**

The decision to remand for further development of the record or for an award benefits is within the discretion of the Court. 42 U.S.C. § 405(g); *see Harman v. Apfel*, 211 F.3d 1172, 1173-74 (9th Cir. 2000). This Circuit has held, however, that an action should be remanded for an award of benefits where three conditions are met: the ALJ has failed to provide legally sufficient reasons for rejecting evidence, no outstanding issue remains that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true.

The Court has found that the ALJ committed legal error. Specifically, the ALJ failed to give legally-sufficient reasons for not crediting the opinion of Plaintiff's treating

physician Dr. Campbell, and the ALJ failed to consider the lay-testimony of Plaintiff's husband James Cowand. As a result, under Ninth Circuit law, this evidence must be credited as true. *See Varney v. Secretary of Health and Human Services*, 859 F.2d 1396 (9th Cir. 1988) ("if grounds for [discrediting a claimant's testimony] exist, it is both reasonable and desirable to require the ALJ to articulate them in the original decision."); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.' " (citing *Hammock v. Bowen,* 879 F.2d 498, 502 (9th Cir.1989); *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir.2000) (same); *Benecke v. Barnhart,* 379 F.3d 587 (9th Cir.2007); ( "Because the ALJ failed to provide legally sufficient reasons for rejecting Benecke's testimony and her treating physicians' opinions, we credit the evidence as true."). But even if the evidence is credited as true, factual issues remain to be resolved before a positive disability determination can be made.

When presented with Dr. Campbell's assessment, the vocational expert opined that Plaintiff would not be able to work on a full time basis. Tr. 55. The ALJ found that Dr. Campbell had been treating Plaintiff for barely twelve months when he prepared his assessment. Tr. 29. If the disabling impairments Dr. Campbell noted were present throughout the entire period he treated Plaintiff, this would be sufficient to show that Plaintiff was disabled for a continuous period of at least twelve months, beginning from the time of her first visit to Dr. Campbell on March 2, 2009. *See* Tr. 287. But Plaintiff claims a disability onset date of March 30, 2006, nearly three years before her first visit to Dr. Campbell. On remand, the ALJ must credit Dr. Campbell's and Mr. Cowand's testimony as true under Ninth Circuit precedent, and must then determine whether the evidence supports Plaintiff's claim of disability for a continuous twelve-month period, and, if so, the disability onset date.

In addition, because the vocational expert was not presented with an RFC that took into account any of Mr. Cowand's statements concerning Plaintiff's limitations, the Court

cannot determine whether Mr. Cowand's opinion – when credited as true – would support a disability determination. The Court is also unable to say whether the ALJ would change his credibility finding regarding Plaintiff's testimony when Mr. Cowand's testimony is credited as true. The ALJ should address these issues on remand in determining whether the evidence supports Plaintiff's claim of disability for a continuous twelve-month period, and, if so, the disability onset date.

**IT IS ORDERED:**

1. Defendant's decision denying benefits is **reversed**.
2. The case is **remanded** for further proceedings as set forth in this order.

Dated this 7th day of June, 2012.

_____
David G. Campbell
United States District Judge